UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHRISTOPHER HANK BECKER and JOHN L. MCAFFRY, on behalf of themselves and all others similarly situated, ) ) ) ) | Class Action Complaint<br><br>Demand for Jury Trial |
| Plaintiffs, ) ) | |
| vs. ) ) | No. 1:15-cv-00230 |
| ANTHEM, INC., ) ) ) | |
| Defendant. ) | |

**CLASS ACTION COMPLAINT**

Plaintiffs Christopher Hank Becker and John L. McAffry ("Plaintiffs"), on behalf of themselves and all others similarly situated, allege as follows:

**NATURE OF THE CASE**

1.      Between approximately December 10, 2014 and January 27, 2015, Anthem, Inc. ("Anthem") was subject to one of the largest data breaches in history (the "Anthem data breach"), wherein hackers stole the personal and financial information of as many as 80 million of Anthem's current and former customers and employees. The personal and financial information obtained by the hackers includes names, birthdates, Social Security numbers, street and email addresses, and employment data, including income.

2.      Anthem's conduct of failing to take proper measures to ensure its data systems were protected, and of failing to disclose to its customers and employees that it did not have adequate data security practices in place, has caused harm and continues to threaten harm to Class members (defined below) across the United States.

3.      As a result of the Anthem data breach, the approximately 80 million Class

members have been exposed to fraud and identity theft.

4. Damages suffered by the Class as a direct result of the Anthem data breach include, *e.g.*, costs associated with the detection and prevention of identity theft and unauthorized use of their personal and financial information; time spent and costs incurred to address and attempt to mitigate the actual and future consequences of the breach, including searching for fraudulent activity, obtaining and reviewing credit reports, and purchasing credit monitoring and similar identity theft protection services; the stress and anxiety of addressing issues resulting from the Anthem data breach; the imminent and impending damages flowing from potential fraud and identify theft posed by their personal and financial information being placed in the hands of hackers; money paid to Anthem for health insurance in that Plaintiffs and Class members would not have obtained insurance from Anthem had Anthem disclosed that it lacked adequate systems to reasonably safeguard customers' information; overpayments paid to Anthem for health insurance in that a portion of the price for insurance was for the costs of Anthem providing reasonable safeguards to protect customers' personal and financial data, which Anthem did not do, and as a result, Plaintiffs and Class members did not receive what they paid for; and continued risk of misuse of Class members' personal and financial information, which remains in the possession of Anthem and which is subject to further breaches so long as Anthem fails to undertake adequate measures to protect the data.

5. Plaintiffs seek to remedy these harms, and prevent their future occurrence, on behalf of themselves and all similarly-situated individuals whose personal and financial information was stolen as a result of the Anthem data breach. Plaintiffs represent all individuals affected by the Anthem data breach, including but not limited to Anthem's current and former customers and employees, and individuals covered by employers' self-insurance and similar

health plans administered or managed by Anthem.  Plaintiffs assert claims against Anthem for negligence, breach of implied contract, breach of contract, and unjust enrichment.  Plaintiffs seek to recover damages including actual damages, restitution, disgorgement, continued credit monitoring and identity theft protection services, injunctive relief including enhanced data security, costs, and reasonable attorney fees.

## PARTIES

6. Plaintiff Christopher Hank Becker resides in California.  He receives Anthem health insurance through his employer.

7. Mr. Becker's personal and financial information was compromised as a result of the Anthem data breach.

8. Plaintiff John L. McAffry resides in Florida.  He is a retiree who receives health insurance through his former employer's self-funded insurance plan.  Anthem is the administrator of the insurance plan.

9. Mr. McAffry's personal and financial information was compromised as a result of the Anthem data breach.

10. Plaintiffs Becker and McAffry suffered damages from having their personal and financial information compromised as a result of the Anthem data breach, which was made possible by Anthem's inadequate data security systems.

11. Defendant Anthem is headquartered at 120 Monument Circle, Indianapolis, IN 46204.

12. Anthem's brands impacted by the breach include Anthem Blue Cross, Anthem Blue Cross and Blue Shield, Blue Cross and Blue Shield of Georgia, Empire Blue Cross and Blue Shield, Amerigroup, Caremore, Unicare, Healthlink, and DeCare.  Anthem disclosed that

"all product lines are impacted" by the breach.

13. In 2014, Anthem changed its name from Wellpoint to Anthem Inc., the brand under which it sold and sells its coverage.

14. Anthem is the second-largest health insurer in the United States. According to Anthem's website, one-in-nine Americans receive coverage for their medical care through Anthem.

15. In addition to selling insurance, Anthem also performs administrative services for self-funded health plans. For example, Anthem provides claims processing and related services for large employers who self-fund their health coverage as opposed to purchasing insurance through Anthem.

## JURISDICTION & VENUE

16. This Court has diversity jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a class action involving more than 100 class members, the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and many members of the class are citizens of states different from Defendant.

17. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Anthem is headquartered here and regularly transacts business here; and some of the Class members reside in this district. The causes of action for Class members also arose, in part, in this district.

## FACTS

**I.     The Healthcare Industry is Placed on Notice of Cyber Attacks**

18. Health care companies, like Anthem, have an obligation to maintain the security of their customers' personal and financial information.

19. The *New York Times* reported that the "threat of a hacking is particularly acute in

the health care and financial services industry, where companies routinely keep the most sensitive personal information about their customers on large databases." (http://www.nytimes.com/2015/02/05/business/hackers-breached-data-of-millions-insurer-says.html (last visited Feb. 5, 2015).)

20. Indeed, on April 8, 2014, the FBI's Cyber Division publicly issued an Industry Notification titled "Health Care Systems and Medical Devices at Risk for Increased Cyber Intrusions for Financial Gain." The notification cautioned that "[c]yber actors will likely increase cyber intrusions against health care systems . . . due to . . . lax cybersecurity standards, and a higher financial payout for medical records in the black market." (https://info.publicintelligence.net/FBI-HealthCareCyberIntrusions.pdf (last visited Feb. 9, 2015).)

**II.     Anthem's Privacy Policy**

21. Anthem describes its privacy obligations in its HIPAA annual notice of privacy practices, where it addresses "protected health information" or "PHI":

> We keep the health and financial information of our current and former members private, as required by law, accreditation standards and our rules.
>
> . . .
>
> We are dedicated to protecting your PHI, and have set up a number of policies and practices to help make sure your PHI is kept secure.
>
> We have to keep your PHI private. . . .
>
> We keep your oral, written and electronic PHI safe using physical, electronic, and procedural means. These safeguards follow federal and state laws. Some of the ways we keep your PHI safe include securing offices that hold PHI, password protecting computers, and locking storage areas and filing cabinets. . . .

(https://www.anthem.com/health-insurance/nsecurepdf/english_common_11832ANMEN) (last visited Feb. 9, 2015).)

Case 1:15-cv-00230-TWP-DML Document 1 Filed 02/16/15 Page 6 of 18 PageID #: 6

22. The privacy policy on Anthem's website states:

> Anthem Blue Cross and Blue Shield maintains policies that protect the confidentiality of personal information, including Social Security numbers, obtained from its members and associates in the course of its regular business functions.
>
> . . .
>
> Anthem Blue Cross and Blue Shield will not use or share Social Security numbers or personal information with anyone outside the company except when permitted or required by federal and state law.
>
> . . .
>
> Anthem Blue Cross and Blue Shield safeguards Social Security numbers and other personal information by having physical, technical, and administrative safeguards in place.
>
> . . .
>
> Anthem is fully committed to the spirit and letter of the Health Insurance Portability and Accountability Act of 1996 (HIPAA), including but not limited to the Privacy Rule that was issued pursuant to HIPAA. A major provision of the Privacy Rule is to safeguard sensitive, personal information about members. This information is referred to as Protected Health Information (PHI), and includes individually identifiable health care and demographic data.

(https://www.anthem.com/health-insurance/about-us/privacy#personal) (last visited Feb. 9, 2015).)

### III. The Anthem Data Breach

23. On February 4, 2015, Anthem made the following announcement by way of a letter from its President and CEO, Joseph R. Swedish, posted on its website:

> . . . Anthem was the target of a very sophisticated external cyber attack. These attackers gained unauthorized access to Anthem's IT system and have obtained personal information from our current and former members such as their names, birthdays, medical IDs/social security numbers, street addresses, email addresses and employment information, including income data. . . .
>
> . . .

6

> Anthem's own associates' personal information - including my own - was accessed during this security breach. We join you in your concern and frustration, and I assure you that we are working around the clock to do everything we can to further secure your data.
>
> Anthem will individually notify current and former members whose information has been accessed. . . .
>
> I want to personally apologize to each of you for what has happened, as I know you expect us to protect your information. We will continue to do everything in our power to make our systems and security processes better and more secure, and hope that we can earn back your trust and confidence in Anthem.

(http://www.anthemfacts.com/ (last visited Feb. 9, 2015).)

24. Anthem's website stated that "all product lines are impacted" and the impacted brands include "Anthem Blue Cross, Anthem Blue Cross and Blue Shield, Blue Cross and Blue Shield of Georgia, Empire Blue Cross and Blue Shield, Amerigroup, Caremore, Unicare, Healthlink, and DeCare." (http://www.anthemfacts.com/faq (last visited Feb. 9, 2015).)

25. The breach also impacted individuals enrolled in employers' self-funded health plans administered by Anthem. (http://www.quarles.com/publications/anthem-breach-potentially-affects-one-in-four-americans/ (last visited Feb. 13, 2015).)

26. Anthem notified the FBI of the breach, and the FBI is investigating. (http://www.anthemfacts.com/ (last visited Feb. 9, 2015).)

27. After and as a result of the breach, Anthem retained Mandiant, one of the world's leading cybersecurity firms, to evaluate Anthem's systems and to identify solutions. (http://www.anthemfacts.com/ (last visited Feb. 9, 2015).)

28. The *New York Times* reported that "hackers were able to breach a database that contained as many as 80 million records of current and former customers, as well as employees." (http://www.nytimes.com/2015/02/05/business/hackers-breached-data-of-millions-insurer-says.html (last visited Feb. 5, 2015).)

29. The Anthem data breach "could be the largest breach of a health care company to date, and one of the largest ever of customer information." (*Id*.)

30. The breach reportedly began on or around December 10, 2014. (http://www.securityweek.com/feedback-friday-industry-reactions-anthem-data-breach (last visited Feb. 9, 2015).)

31. Anthem did not detect the breach until over a month and a half later, on January 29, 2015. (http://www.nytimes.com/2015/02/05/business/hackers-breached-data-of-millions-insurer-says.html (last visited Feb. 5, 2015).)

32. Anthem did not publicly announce the breach until February 4, 2015.

33. Anthem said it would "begin to mail letters to impacted members in the coming weeks." (http://www.anthemfacts.com/ (last visited Feb. 9, 2015).) Anthem's delay in notifying affected persons of the breach may cause such persons to incur additional damages.

34. Anthem has become aware of phishing and cold-calling scams aimed at victims of the Anthem data breach:

> Phishers and phone fraudsters are capitalizing on public concern over [the Anthem data breach]. . . .
>
> The flood of phishing scams was unleashed just hours after Anthem announced publicly [the breach]. . . .
>
> . . .
>
> According to Anthem, fraudsters also are busy perpetrating similar scams by cold-calling people via telephone. In a recording posted to its toll-free hotline for this breach (877-263-7995), Anthem said it is aware of outbound call scams targeting current and former Anthem members.

(http://krebsonsecurity.com/2015/02/phishers-pounce-on-anthem-breach/ (last visited Feb. 10, 2015).)

35. The *New York Times* reported that Social Security numbers are a "particularly

popular target for hackers. Combinations of Social Security numbers, birth dates and names sell for more than even credit card numbers in an increasingly sophisticated black market, where such information is sold and resold through popular auction sites." (http://www.nytimes.com/2015/02/05/business/hackers-breached-data-of-millions-insurer-says.html (last visited Feb. 5, 2015).)

36. Anthem also admitted that the information involved was not encrypted in its database, which "drew immediate fire from some security experts" because "it is irresponsible for businesses not to encrypt the data." (http://www.latimes.com/business/la-fi-anthem-hacked-20150204-story.html#page=1 (last visited Feb. 5, 2015).)

37. Anthem disclosed that it would provide "identity theft repair and credit monitoring services -- offered free of charge for two years." (http://www.anthemfacts.com/ (last visited Feb. 13, 2015).)

38. This is not Anthem's first experience with data security breaches. As reported by the *Los Angeles Times*:

> In 2013, the company agreed to pay $1.7 million to resolve federal allegations that it exposed protected health information of 612,402 people online because of security weaknesses.
>
> Federal officials said Anthem had inadequate safeguards in an online application database and left names, birth dates, Social Security numbers and health data accessible to unauthorized people.
>
> The investigation by the U.S. Department of Health and Human Services found that the insurer didn't adequately implement policies for authorizing access to the database and didn't have technical safeguards in place to verify users.

(http://www.latimes.com/business/la-fi-anthem-hacked-20150204-story.html#page=1 (last visited Feb. 5, 2015).)

39. Also, in a separate data breach in 2008, "personal information for about 128,000

customers in several states had been exposed online."

(https://www.bostonglobe.com/business/2015/02/05/health-insurer-anthem-hit-massive-data-breach/bObb3wwN6cMYXVgOYXRyCL/story.html (last visited Feb. 9, 2015).

40. Some Plaintiffs and many Class members receive Anthem's insurance and services through plans of their employer and thus have no control over terminating a relationship with Anthem. As a result, further protection through injunctive relief (*e.g.*, improved data security) is necessary.

IV.  **Identity Theft Consequences**

41. Identity thieves can use Social Security numbers and related information to perpetrate a variety of crimes including but not limited to opening new financial accounts and incurring charges in another person's name; taking out loans in another person's name; opening utility accounts; obtaining medical services using the victim's information; using the victim's information to obtain government benefits; filing a fraudulent tax return using the victim's information to obtain a fraudulent refund; obtaining a driver's license or identification card in the victim's name but with another person's picture; or giving false information to police during an arrest. (www.secretservice.gov/press/Take_Charge.pdf (last visited Feb. 9, 2015).)

42. According to The President's Identity Theft Task Force, *Combating Identity Theft: A Strategic Plan* (2007) at pg. 11:

> In addition to the losses that result when identity thieves fraudulently open accounts or misuse existing accounts, . . . individual victims often suffer indirect financial costs, including the costs incurred in both civil litigation initiated by creditors and in overcoming the many obstacles they face in obtaining or retaining credit. Victims of non-financial identity theft, for example, health-related or criminal record fraud, face other types of harm and frustration.
>
> In addition to out-of-pocket expenses that can reach thousands of dollars for the victims of new account identity theft, and the emotional toll identity theft can take, some victims have to spend what can be a considerable amount of time to

repair the damage caused by the identity thieves. Victims of new account identity theft, for example, must correct fraudulent information in their credit reports and monitor their reports for future inaccuracies, close existing bank accounts and open new ones, and dispute charges with individual creditors.

(http://www.ftc.gov/sites/default/files/documents/reports/combating-identitytheft-strategic-plan/strategicplan.pdf (last visited Feb. 9, 2015).)

43. On February 6, 2015, the Connecticut Department of Revenue issued a warning to customers affected by the Anthem data breach. The Department advised taxpayers to file their tax returns as soon as possible:

The personally identifiable information apparently hacked at Anthem is exactly what tax fraud thieves use to make false refund claims that appear to be legitimate. They will try to file for and steal the refund before the real taxpayer has a chance. Then the taxpayer will be denied the refund and it can take years to resolve the problem.

(http://www.ct.gov/drs/cwp/view.asp?Q=560558&A=1436&pp=12&n=1 (last visited Feb. 10, 2015).)

## CLASS ACTION ALLEGATIONS

44. Plaintiffs bring all claims as class claims under Federal Rule of Civil Procedure 23. The requirements of Federal Rule of Civil Procedure 23(a) and 23(b)(3) are met with respect to the Class.

45. The Class is defined as follows:

All persons nationwide whose personal and financial information was compromised by the data breach first disclosed by Anthem on February 4, 2015.

46. The Class is so numerous that joinder of all members is impracticable. The Class includes as many as 80 million current and former customers and employees whose personal and financial information was compromised by the Anthem data breach.

47. There are numerous questions of law and fact common to Plaintiffs and the Class,

including the following:

- whether Anthem engaged in the wrongful conduct alleged herein;
- whether Anthem owed a duty to Plaintiffs and Class members to adequately protect their personal and financial information;
- whether Anthem breached its duties to protect the personal and financial information of Plaintiffs and Class members by failing to provide adequate data security;
- whether Anthem knew or should have known that its data security systems were vulnerable to attack;
- whether Anthem's conduct resulted in or was the proximate cause of the breach of its systems;
- whether Anthem failed to inform Class members that it did not maintain adequate data security systems to reasonably safeguard customers' data;
- whether Class members suffered legally cognizable damages as a result of Anthem's conduct;
- whether Class members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or other equitable relief.

48. Plaintiffs' claims are typical of the claims of the Class in that the representative Plaintiffs, like all Class members, had their personal and financial information compromised in the Anthem data breach.

49. Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs have retained counsel who are experienced in class action and complex litigation, including data breach litigation.

50. Plaintiffs have no interests that are adverse to, or in conflict with, the Class.

51. Questions of law and fact common to the Class predominate over any questions which may affect only individual Class members.

52. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation.

53. Absent a class action, most Class members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy.

54. The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for Anthem. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

## COUNT I – NEGLIGENCE

### (On Behalf of All Class Members)

55. Plaintiffs incorporate by reference those paragraphs set out above as if fully set forth herein.

56. Anthem owed a duty to Plaintiffs and Class members to exercise reasonable care in obtaining, retaining, and safeguarding their personal and financial information from being accessed, stolen, and misused by unauthorized persons. This duty included, among other things, designing, maintaining, and testing Anthem's security systems to ensure that Class members' personal and financial information in Anthem's possession was adequately secured. Anthem further owed a duty to Class members to implement processes that would detect a breach of its

data security systems in a timely manner and to timely act upon any warnings and alerts.

57. Anthem owed a duty as articulated on, *e.g.*, Anthem's website and in its HIPAA annual notice of privacy practices quoted above, to protect Class members' sensitive personal and financial information.

58. Anthem owed a duty to safeguard Class members' personal and financial information as set forth in HIPPA, *e.g.*, 45 C.F.R. §§ 164.306(a), 308(a), 312(a) & (d); 45 C.F.R. § 164.530(c).

59. Anthem owed a duty to provide Class members with timely notice that their personal and financial information had been illegally accessed.

60. Anthem owed a duty to disclose the material fact that Anthem's computer systems and data security practices were inadequate to safeguard Class members' personal and financial data from theft.

61. Anthem breached its duties by the conduct alleged herein by, among other things, (a) failing to maintain adequate data security practices to safeguard Class members' personal and financial information; (b) failing to detect the data breach in a timely manner; (c) failing to notify affected persons of the data breach in a timely manner; and (d) failing to disclose that Anthem's data security practices were inadequate to safeguard Class members' personal and financial data.

62. The breach of the aforementioned duties was willful or reckless in light of the prior breaches into Anthem's database and the FBI Cyber Division's publicly issued statement, all of which should have alerted Anthem to upgrade the security of its data to protect against future cyberattacks.

63. Damages suffered by the Class are set forth in the introductory section above.

### COUNT II - BREACH OF IMPLIED CONTRACT

**(On Behalf of All Class Members)**

64. Plaintiffs incorporate by reference those paragraphs set out above as if fully set forth herein.

65. When Plaintiffs and Class members provided their personal and financial information to Anthem to purchase health insurance, Plaintiffs and Class members entered into implied contracts with Anthem pursuant to which Anthem agreed to take reasonable measures to safeguard and protect such information.

66. Plaintiffs and Class members performed their obligations under the implied contracts with Anthem.

67. Anthem breached the implied contracts it made with Plaintiffs and Class members by failing to provide reasonable data security measures to safeguard their personal and financial information.

68. The damages sustained by Plaintiffs and Class members as described herein were the direct and proximate result of Anthem's breaches of its implied contracts.

**COUNT III - BREACH OF CONTRACT**

**(On Behalf of Current and Former Customers)**

69. Plaintiffs incorporate by reference those paragraphs set out above as if fully set forth herein.

70. Anthem has a contractual obligation to maintain the security of its customers' personal and financial information, which Anthem itself recognizes on its website and in its HIPAA annual notice of privacy practices quoted above.

71. Anthem's privacy policies formed part of the basis of the bargain between Anthem and its customers.

72. Anthem breached its contractual obligations by failing to reasonably safeguard the personal and financial information of Plaintiffs and Class members.

73. The damages sustained by Plaintiffs and Class members described herein were the direct and proximate result of Anthem's breaches of its contracts.

## COUNT IV - UNJUST ENRICHMENT

### (On Behalf of Current and Former Customers)

74. Plaintiffs incorporate by reference those paragraphs set out above as if fully set forth herein.

75. Plaintiffs and Class members conferred a monetary benefit on Anthem in the form of monies paid for the purchase of health insurance from Anthem during the period of the Anthem data breach.

76. Monies paid by Plaintiffs and Class members were intended to be used by Anthem, in part, to pay for the administrative and other costs of providing reasonable data security and protection of Class members' personal and financial information.

77. Anthem failed to provide reasonable data security and protections to Class members' personal and financial information.  As a result, Plaintiffs and Class members overpaid Anthem for the health insurance they purchased.

78. Under principles of equity, Anthem should not be permitted to retain a portion of the money paid by Plaintiffs and Class members because Anthem failed to provide reasonable data security to protect Class members' personal and financial information, which they paid for but did not receive.

79. Anthem wrongfully accepted and retained these monetary benefits to the detriment of Plaintiffs and Class members.

80. Anthem's enrichment at the expense of Plaintiffs and Class members is unjust.

81. As a result of Anthem's wrongful conduct, Plaintiffs and the Class are entitled to restitution and disgorgement of insurance premiums and any other compensation obtained by Anthem.

## RELIEF REQUESTED

Plaintiffs, on behalf of themselves and all others similarly situated, request that the Court enter judgment against Anthem, as follows:

1. An award to Plaintiffs and the Class of compensatory, direct, consequential, and incidental damages;

2. An award of further credit monitoring and identity theft protection services beyond the two years Anthem is currently offering;

3. An injunctive award requiring Anthem to strengthen its data security procedures and submit to annual audits;

4. An award of attorneys' fees, costs, and expenses, as provided by law or equity, or as otherwise available;

5. An award of pre-judgment and post-judgment interest, as provided by law or equity; and

6. Such other or further relief as the Court may allow.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of all issues in this action so triable of right.

Dated: February 16, 2015                    Respectfully submitted,

  /s/ Richard E. Shevitz
COHEN & MALAD, LLP
Irwin B. Levin, No. 8786-49
Richard E. Shevitz, No. 12007-49
Scott D. Gilchrist, No. 16720-53
Vess A. Miller, No. 26495-53
Lynn A. Toops, No. 26386-49A
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Telephone: (317) 636-6481
Fax: (317) 636-2593
ilevin@cohenandmalad.com
rshevitz@cohenandmalad.com
sgilchrist@cohenandmalad.com
vmiller@cohenandmalad.com
ltoops@cohenandmalad.com

BERGER & MONTAGUE, PC
Laddie Montague
Sherrie Savett
Shanon Carson
Michael Dell'Angelo
Jon Lambiras
1622 Locust St.
Philadelphia, PA 19103
Telephone: (215) 875-3000
Fax: (215) 875-4604
hlmontague@bm.net
ssavett@bm.net
scarson@bm.net
mdellangelo@bm.net
jlambiras@bm.net

THE BECKER LAW FIRM
Michael F. Becker
50 Public Square, Suite 3500
Cleveland, OH 44113
Telephone: (440) 372-0810
mbecker@beckerlawlpa.com

*Counsel for Plaintiffs and the Proposed Class*